IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

LUCKY I. IROMUANYA

                    Petitioner,                              4:12CV3091

        vs.

SCOTT FRAKES                                         MEMORANDUM AND ORDER

                    Respondent.


        This matter is before the court on Lucky Iromuanya's petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254. Filing No. 1. The action was briefed on the merits

and submitted on the record. In 2004, a jury convicted Iromuanya in the District Court of

Lancaster County, Nebraska of Count I, attempted murder in the second degree, Count

III, murder in the second degree, and Counts II and IV, using a weapon to commit a

felony. *See* Neb. Rev. Stat. §§ 28-201, 28-304, and 28-1205. Iromuanya's convictions

were twice affirmed by the Nebraska Supreme Court.[1] Iromuanya is currently serving an

aggregate prison term of 70 years to life.[2] After an extended and careful review of the

record, the court finds no violation of Lucky Iromuanya's constitutional rights and thus

denies his Petition for a Writ of Habeas Corpus.

    **I.    Factual Background**

_____

        [1] *See State v. Iromuanya*, 719 N.W.2d 263, 296 (Neb. 2006) ("*Iromuanya I*") and *State v. Iromuanya*, 806 N.W.2d 404 (Neb. 2011) ("*Iromuanya II*").

        [2] The District Court of Lancaster County sentenced Iromuanya to an indeterminate term of 10 to 25 years' imprisonment for each of Counts II and IV, 25 to 35 years for Count I, and a term of not less than life imprisonment nor more than life imprisonment for Count III. The Court ordered that Iromuanya serve all counts consecutively. On direct appeal, the Nebraska Supreme Court affirmed Iromuanya's convictions on all counts, but modified the sentence for Count III "to not less than 50 years' imprisonment nor more than life imprisonment . . . ." *State v. Iromuanya*, 719 N.W.2d 263, 296 (Neb. 2006). Counts I and III were modified from consecutive to concurrent terms, while Counts II and IV remained consecutive to Counts I and III and to each other. *Id.*

### a. Underlying Crimes

The parties do not dispute the trial court's factual findings. Facts relevant to Iromuanya's claims, as recounted in *Iromuanya I* & *Iromuanya II*[3], are as follows:

In the early morning hours of April 25, 2004, Lucky Iromuanya and a friend, Aroun Phaisan, attended a party at the shared residence of Jenna Cooper and Lindsey Ingram in Lincoln, Nebraska. *Iromuanya I*, 719 N.W.2d at 273. At some point after Iromuanya and Phaisan's arrival, a dispute arose over a missing collection of shot glasses that belonged to Cooper or Ingram. *Id.* at 274. After Cooper became aware of the missing shot glasses, she followed an unidentified individual outside and said she wanted the shot glasses returned. *Id.* Iromuanya and Phaisan were standing near the shot glass collection before it went missing. *Id.* Apparently Iromuanya and Phaisan were concerned they would be accused of the theft, so they left the residence. *Id.* Outside, Ingram observed Iromuanya and Phaisan leaving the house "very quickly" and she told the two men no one could leave until the items were returned. *Id.* Shortly thereafter, Nolan Jenkins exited the residence. *Id.* Jenkins grabbed and pushed Iromuanya, and inquired whether Iromuanya was responsible for the missing glasses. *Id.* After a brief scuffle between Jenkins and Iromuanya, several bystanders intervened and separated the two men. *Id.* During this intervention, Iromuanya punched Jenkins in the back of the head. *Id.*

After the physical altercation, Iromuanya became visibly agitated. *Iromuanya I*, 719 N.W.2d at 275. Several individuals, including Cooper, approached Iromuanya in an

---

[3] *See State v. Iromuanya*, 719 N.W.2d 263, 296 (Neb. 2006) ("*Iromuanya I*") and *State v. Iromuanya*, 806 N.W.2d 404 (Neb. 2011) ("*Iromuanya II*").

effort to calm him down, but their attempts were unsuccessful. *Id.* Iromuanya remained agitated and fixated on Jenkins. *Id.* Iromuanya eventually calmed down, but only briefly; after Cooper asked Iromuanya about the shot glasses, Iromuanya became upset again and denied taking them. *Id.* Approximately five minutes after the initial altercation, Jenkins walked back across the yard toward Iromuanya. *Iromuanya I*, 719 N.W.2d at 275. Jenkins walked at a normal pace and "some witnesses testified that [Jenkins'] hand was outstretched, as if he intended to shake hands with Iromuanya. Jenkins testified that [that] was his intent." *Id.* One witness "observed that Iromuanya appeared to become more upset as Jenkins approached . . . ." *Id.* Once Jenkins came within one step of Iromuanya, Iromuanya shoved Jenkins in the chest with both hands, knocking Jenkins backward. *Id.* Several individuals stepped-in between Jenkins and Iromuanya. *Id.* At that point, Iromuanya removed a handgun from his pants pocket, pointed the weapon at Jenkins, who was approximately five feet away, and fired one round. *Iromuanya I*, 719 N.W.2d at 276. "It was later determined that a single bullet entered Jenkins' left temple and exited above his left ear. The bullet then pierced Cooper's neck, causing her death." *Id.*

In 2004, a jury convicted Iromuanya in the District Court of Lancaster County, Nebraska, of Count I, attempted murder in the second degree, Count III, murder in the second degree, and Counts II and IV, using a weapon to commit a felony. *See* Neb. Rev. Stat. §§ 28-201, -304, and -1205.

### b.  Procedural History

#### i.  Direct Appeal

The same counsel represented Iromuanya at trial and on direct appeal.

*Iromuanya II*, 806 N.W.2d at 418. On direct appeal, Iromuanya made no claims regarding ineffective assistance of trial counsel, and he made only one assignment of error regarding jury instructions. *Iromuanya I*, 719 N.W.2d at 277. Iromuanya claimed the trial court erred in giving jury instruction No. 8, which pertained to the element of intent.[4] *Id.* Iromuanya did not argue that the instruction incorrectly stated the law, nor did he argue it violated his constitutional rights; instead, Iromuanya argued that the instruction was prejudicial because it impermissibly allowed the jury to infer his intent from the result of his actions. *Id.* at 287. The Nebraska Supreme Court rejected Iromuanya's argument and concluded the trial court did not err. *Id.* at 288. Iromuanya's direct appeal concluded when the Supreme Court of the United States denied his petition for writ of certiorari. Filing No. 12, United States Supreme Court Order Direct Appeal.

### ii.  Post-Conviction Appeal

After the conclusion of Iromuanya's direct appeal, he filed a petition for postconviction relief. New counsel represented Iromuanya during his postconviction proceedings. Filing No. 12-12, Order Appointing Counsel Other Than Public Defender.

---

[4] Instruction No. 8 contained the following language:

Intent is an element of the crimes charged against the defendant. In deciding whether the defendant acted with intent, you should consider his words and acts and all of the surrounding circumstances.
You may infer, but are not required to infer, that a person intended a reasonably probable result of his or her act.

Filing No. 12-11, at ECF p.15.

The District Court of Lancaster County, Nebraska, denied Iromuanya's petition for postconviction relief without an evidentiary hearing. Filing No. 12-12, Transcript *Iromuanya II*, at ECF pp.8-32. Iromuanya appealed to the Nebraska Supreme Court. *See Iromuanya II*, 806 N.W.2d 404 (Neb. 2011).

On appeal, Iromuanya argued that the district court erred by failing to grant an evidentiary hearing on all his claims pertaining to ineffective assistance of trial counsel and appellate counsel.[5] *Id*. at 418. Iromuanya argued that trial counsel "failed to provide objectively reasonable advice and representation in respect to plea negotiations" and that he "was not adequately informed of the status and substance of offers made by the prosecution . . . ." Filing No. 12-9, Brief of Appellant *Iromuanya II*, at ECF p.33. Iromuanya concluded that "[b]ut for the ineffectiveness of [his] attorneys, the results of the proceedings would have been different." *Id*. The Nebraska Supreme Court rejected Iromuanya's argument. *Iromuanya II*, 806 N.W.2d at 420. The Court observed that "at Iromuanya's sentencing hearing, his trial counsel stated that (1) he had sent a letter to the prosecution extending Iromuanya's offer to plead guilty to manslaughter; and (2) if the prosecutor had accepted the offer, Iromuanya would have pleaded guilty." *Id*. The Court concluded that because Iromuanya "[did] not allege that the prosecutor offered him a plea agreement[,]" his allegations were "insufficient to overcome the presumption that his trial counsel acted reasonably."[6] *Iromuanya II*, 806 N.W.2d at 420.

---

[5] Iromuanya's placed his constitutionally relevant postconviction claims within sizeable headings. *See* Filing No. 12-9, at ECF pp.18, 33, Brief of Appellant *Iromuanya II*.  In relevant part, Iromuanya alleged the denial of his right to effective assistance of counsel and due process of the law in violation of the 5th, 6th, and 14th Amendments to the United States Constitution.

[6] Under Nebraska law, "[a] court must grant an evidentiary hearing on a postconviction motion when the motion contains factual allegations which, if proven, constitute an infringement of the movant's

Additionally, Iromuanya argued "the [district] court erred in failing to find that trial counsel was ineffective for failing to (1) properly challenge jury instructions and (2) object to the court's response to the jurors' question during deliberations."[7] *Iromuanya II*, 806 N.W.2d at 434. The relevant instructions for Iromuanya's claims were Jury Instruction No. 3 and Jury Instruction No. 5. In *Iromuanya II*, the Nebraska Supreme Court explained these instructions by stating that,

> Jury instruction No. 3 set out the elements for attempted second degree murder of Jenkins. The instruction informed jurors that they could find Iromuanya guilty or not guilty and did not have a lesser-included offense.[8]
> Jury instruction No. 5 set out the elements for the charge of second degree murder of Cooper. It did have a lesser-included offense of

---

rights under the Nebraska or federal Constitution." *Iromuanya II*, 806 N.W.2d at 419 (citing *State v. McGhee*, 787 N.W.2d 700 (Neb. 2010)). "But if a postconviction motion alleges only conclusions of fact or law—or if the records and files in the case affirmatively show that the movant is entitled to no relief—no evidentiary hearing is required." *Id.*

[7] "During the jury's deliberations, jurors sent this question to the court: 'Can a "sudden quarrel" be a consideration when making a decision of not guilty or guilty in the charge of attempted murder in the 2nd degree?'" *Iromuanya II*, 806 N.W.2d at 434-35. "Defense counsel agreed with the prosecutor that the jury could not consider a sudden quarrel for attempted second degree murder, and that is how the court instructed the jury." *Id.* at 435.

[8] The material elements for Attempted Murder in the Second Degree were put to the jury in Instruction No. 3 as follows:

1. That the defendant, Lucky Ikenna Iromuanya, intended to commit Murder in the Second Degree; and

2. That the defendant attempted to commit Murder in the Second Degree by attempting to cause the death of Nolan Jenkins, intentionally but without premeditation; and

3. That the defendant did so by intentionally engaging in conduct which, under the circumstances as he believed them to be, constituted a substantial step in a course of conduct intended to culminate in his commission of the crime of Murder in the Second Degree; and

4. That the defendant's conduct strongly corroborated his intent to commit Murder in the Second Degree; and

5. That the defendant did so on or about April 25, 2004, in Lancaster County, Nebraska.

Filing No. 12-11, Jury Instruction No. 3, at ECF pp.6-7.

manslaughter and informed jurors that they could find Iromuanya guilty of murder in the second degree, or guilty of manslaughter, or not guilty. If the jury found that the State had failed to prove second degree murder, the instruction stated that it must acquit Iromuanya of that charge and consider the crime of manslaughter.[9]

The manslaughter elements in instruction No. 5 required the State to prove that Iromuanya killed Cooper without malice upon (1) a sudden quarrel or (2) unintentionally while in the commission of an unlawful act, to wit: recklessly causing bodily injury to Jenna Cooper.

*Iromuanya II*, 806 N.W.2d at 433 (internal quotation marks omitted). Iromuanya claimed "[t]he critical factual question to be decided [was] whether [he] acted intentionally but by the provocation of a sudden quarrel."[10] Filing No. 12-9, Brief of Appellant *Iromuanya II*, at ECF pp. 22-23. He claimed the jury was disallowed from considering the issue because "the jury was expressly informed both by Instruction No. 10 and the answer to the jurors' question, that provocation and sudden quarrel [could not] be considered while addressing the intent requirement for second degree murder related offenses."[11] Filing No. 12-9, Brief of Appellant *Iromuanya II*, at ECF p. 23.

_____

[9] The material elements for Murder in the Second Degree were put to the jury in Instruction No. 5 as follows:

1. That the defendant, on or about April 25, 2004, did kill Jenna Cooper;

2. That the defendant did so in Lancaster County, Nebraska; and

3. That the defendant did so intentionally, but without premeditation.

Filing No. 12-11, at ECF p.10.

[10] The gravamen of Iromuanya's argument was that Instructions No. 3 and No. 5 should have included a negative element that required the prosecution to prove beyond a reasonable doubt that sudden quarrel provocation did not precipitate Iromuanya's intent to kill. *See* Filing No. 12-9, Brief of Appellant *Iromuanya II*, at ECF p.18 ("[t]here [was] no lesser-included offense instruction [in Instruction No. 3] and the instruction [did] not require the State to prove beyond a reasonable doubt that the [attempted murder] of Nolan Jenkins was intentional but not intentional by provocation caused by a sudden quarrel.").

[11] Jury Instruction No. 10 contained the following language:

Iromuanya further alleged the instructions relieved the State of its burden to "prove beyond a reasonable doubt that the death or the attempt to cause the death was not committed by provocation during the course of a sudden quarrel." Filing No. 12-9, Brief of Appellant *Iromuanya II*, at ECF p.24. Thus, Iromuanya argued, defense counsel's failures resulted in "a denial of due process . . . and the right to effective assistance of counsel." Filing No. 12-9, Brief of Appellant *Iromuanya II*, at ECF p. 24.

The Nebraska Supreme Court rejected all of Iromuanya's arguments. First, the Court addressed Iromuanya's argument that counsel failed to challenge the trial court's response to the jurors' inquiry. The Court noted that the trial court "instructed the jurors that they could not consider a sudden quarrel provocation in deciding Iromuanya's intent for attempted second degree murder . . . ." *Iromuanya II*, 806 N.W.2d at 434. The Court determined the "response was correct under the governing law at the time of Iromuanya's trial." *Id.* The Court explained that sudden quarrel provocation was derived from Neb. Rev. Stat. § 28-305(1) (Reissue 2008), which "provides that '[a] person commits manslaughter if he kills another without malice, either upon a sudden quarrel,

---

"Sudden quarrel" is a legally recognized and sufficient provocation which causes a reasonable person to lose normal self control. The phrase "sudden quarrel" does not necessarily mean an exchange of angry words or an altercation contemporaneous with an unlawful killing and does not require a physical struggle or other combative corporal contact between the defendant and Nolan Jenkins. In considering the offense of manslaughter, you should determine whether the defendant acted under the impulse of sudden passion suddenly aroused which clouded reason and prevented rational action, whether there existed reasonable and adequate provocation to excite the passion of the defendant and obscure and disturb his power of reasoning to the extent that he acted rashly and from passion, without due deliberation and reflection, rather than from judgment, and whether, under all the facts and circumstances as disclosed by the evidence, a reasonable time had elapsed from the time of provocation to the instant of the killing for the passion to subside and reason resume control of the mind. You should determine whether the suspension of reason, if shown to exist, arising from sudden passion, continued from the time of provocation until the very instant of the act producing death took place.

Filing No. 12-11, at ECF p. 19.

or causes the death of another unintentionally while in the commission of an unlawful act.'" The Court explained the law governing at the time of Iromuanya's trial:

> In *State v. Jones*, [515 N.W.2d 654, 659 (Neb. 1994) (subsequent history omitted)], we specifically held that "there is no requirement of an intention to kill in committing manslaughter. The distinction between second degree murder and manslaughter upon a sudden quarrel is the presence or absence of an intention to kill."
>
> So under *Jones*, the district court correctly instructed the jurors that they could not consider a sudden quarrel provocation in deciding whether Iromuanya was guilty or not guilty of attempted second degree murder for shooting at Jenkins. It is true that we have recently overruled our decision in *Jones* and held that sudden quarrel manslaughter is an intentional killing. But this decision was issued well after Iromuanya's trial and direct appeal. The failure to anticipate a change in existing law does not constitute deficient performance.[12]

*Iromuanya II*, 806 N.W.2d at 434-35. Thus, the Court reasoned, "Iromuanya's trial counsel was not ineffective for failing to object to the court's response to the jury." *Id.* at 435.

Next, the Court addressed Iromuanya's argument that counsel failed to challenge various jury instructions. The Court observed, "Instruction No. 10 informed jurors that they should consider whether the conflict between Iromuanya and Jenkins was a sufficient provocation for the charge of manslaughter." *Iromuanya II*, 806 N.W.2d at 435. The Court noted, however, that sudden quarrel provocation was relevant only to the charge of manslaughter as a lesser-included offense to the charge of second- degree murder of Cooper. *Id.* The Court concluded that, "[i]f the jurors had believed that

---

[12] The holding in *State v. Jones*, 515 N.W.2d 654 (Neb. 1994) was overruled by *State v. Ronald Smith*, 806 N.W.2d 383 (Neb. 2011) (holding that sudden quarrel manslaughter is an intentional killing). Although *Ronald Smith* was decided before *Iromuanya II*, retroactive application of the *Ronald Smith* holding applies only to cases on, or pending on, direct review. *See State v. William Smith*, 822 N.W.2d 401 (Neb. 2012) (citing *Griffith v. Kentucky*, 479 U.S. 314 (1987)) (establishing that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, *pending on direct review or not yet final* . . . .") (emphasis added). This Court notes that Iromuanya's direct appeal (*Iromuanya I*) concluded January 16, 2007. *See* Filing No. 12-2, US Supreme Court Order Direct Appeal.

Iromuanya did not intend to kill Jenkins, the instructions required them to find him not guilty of attempted second degree murder."[13] *Iromuanya II,* 806 N.W.2d at 435. The Court also rejected "Iromuanya's argument that the instructions relieved the State of its burden to prove beyond a reasonable doubt that the attempt to cause death was not committed during a sudden quarrel provocation." *Id.* The Court stated, "[d]ue process requires the prosecution to prove, beyond a reasonable doubt, every fact necessary to constitute the crime charged."[14] *Id.* The Court explained that "[h]ere, the instruction for attempted second degree murder of Jenkins informed the jury that the State had to prove Iromuanya's intent to kill beyond a reasonable doubt[]" and that "[t]he absence of a provocation is not an element of second degree murder . . . ." *Id.* The Court concluded Iromuanya's "[d]efense counsel [was] not ineffective for failing to object to jury instructions that, when read together and taken as a whole, correctly state[d] the law and [were] not misleading." *Id.*

### c. Federal Habeas Corpus Action

Iromuanya timely filed his petition in this action *pro se* in 2012. Filing No. 1. In 2013, this court appointed counsel to Mr. Iromuanya for the limited purpose of submitting briefs, Filing No. 33, and Iromuanya filed a brief in support of his petition on

---

[13] This reasoning would have necessarily led the jury to the same result for the charge of second-degree murder in re Cooper. Had the jury found no intention to kill, then, and only then, would the jury have been prompted to consider manslaughter as set forth in Instruction No. 5.

[14] Although Iromuanya did not allege a Due Process violation by the trial court in his postconviction brief, the Nebraska Supreme Court appears to, at least implicitly, address the issue as if he had. As authority, the Court cited cases regarding the constitutional requirement that guilt must be proven beyond a reasonable doubt. *See State v. Putz,* 662 N.W.2d 606, 611-12 (Neb. 2003) (addressing claim of erroneous jury instruction defining "reasonable doubt") (citing *In re Winship,* 397 U.S. 358, 364 (1970) ("hold[ing] that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."). The court addresses this issue beginning at page 24, below.

the merits. Filing No. 39. Respondent filed a brief in response to Iromuanya's petition, Filing No. 22, and a reply brief to Iromuanya's brief in support. Filing No. 44. In 2015, the court granted respondent's Motion to Substitute Party and Scott Frakes, acting in his official capacity as Director of the Nebraska Department of Correctional Institutions, was named Respondent. Filing No. 48.

The court addresses Iromuanya's claims below.

## II. Legal Framework

### a. Standard of Review

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the law and the facts. *See* 28 U.S.C. § 2254(d). Section 2254(d)(1) states that a federal court may grant a writ of habeas corpus if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As explained by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362 (2000), a state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts. 529 U.S. at 405-06. A state court decision involves an "unreasonable application" when it identifies the correct legal rule, but unreasonably applies it to the facts. *Id.* at 407. "A state court's application of clearly established federal law must be objectively unreasonable, not merely incorrect, to warrant the granting of a writ of habeas corpus." *Arnold v. Dormire*, 675 F.3d 1082, 1085 (8th Cir. 2012) (internal citations and quotation marks omitted).

With regard to the deference owed to factual findings of a state court's decision, Section 2254(d)(2) states that a federal court may grant a writ of habeas corpus if a state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

As the Supreme Court noted, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011). The deference due state court decisions "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id.* In short, "[i]t bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* However, this high degree of deference only applies where a claim has been adjudicated on the merits by the state court. *See Brown v. Luebbers*, 371 F.3d 458, 460 (8th Cir. 2004) ("[A]s the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA standard to [the petitioner's] claim. The claim must have been 'adjudicated on the merits' in state court.'").

The Eighth Circuit clarified what it means for a claim to be adjudicated on the merits, finding that:

AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even a correct decision by a state court . . . . Accordingly, the postconviction trial court's discussion of counsel's performance—combined with its express determination that the ineffective-assistance claim as a whole lacked merit—plainly suffices as an adjudication on the merits under AEDPA.

*Worthington v. Roper*, 631 F.3d 487, 496-97 (8th Cir. 2011) (internal quotation marks and citations omitted).

The Eighth Circuit also determined that a federal court reviewing a habeas claim under AEDPA must "look through" the state court opinions and "apply AEDPA review to the 'last reasoned decision' of the state courts." *Id.* at 497 (internal citation omitted). A district court should do "so regardless of whether the affirmance was reasoned as to some issues or was a summary denial of all claims." *Id.* The Supreme Court agrees, stating:

There is no text in the statute requiring a statement of reasons. The statute refers only to a "decision," which resulted from an "adjudication." As every Court of Appeals to consider the issue has recognized, determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.

*Harrington*, 131 S.Ct. at 784.

**III. Discussion**

Condensed and summarized for clarity, Iromuanya's claims are as follows:[15]

**a. Claim One: Ineffective Assistance of Counsel**

Iromuanya's first claim alleges he was denied due process of law and the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments *because* his trial counsel: (1) rejected a plea agreement without first informing Petitioner

---

[15] Iromuanya's petition for Writ of Habeas Corpus is located in Filing No. 1.

of the plea offer; and (2) failed to recognize that the prosecutor had a duty to prove beyond a reasonable doubt "the absence of a sudden quarrel provocation" regarding the second degree murder charge and therefore failed to object on that basis. Filing No. 7. Iromuanya asks the court to grant his petition or, in the alternative, grant an evidentiary hearing.

### i. Procedural Defenses

Respondent concedes that Iromuanya's claim of ineffective assistance of counsel "does not appear to have been procedurally defaulted." Filing No. 22, at ECF p. 7. The court finds that Iromuanya's claims of ineffective assistance of counsel were fairly presented to the Nebraska Supreme Court and properly exhausted at the state level pursuant to 28 U.S.C. § 2254(b)(1)(A), and thus are ripe for this court's review.[16]

### ii. Principles of Law

Claims of ineffective assistance of counsel are reviewed under the two-pronged standard outlined in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires that the petitioner demonstrate both that his counsel's performance was deficient, and that such deficient performance prejudiced the petitioner. *Id.* at 687; *see also Bryson v.*

---

[16] The court notes that, in *Iromuanya II,* the Nebraska Supreme Court viewed the "core issue" as "whether the [district] court erred in dismissing Iromuanya's postconviction motion without an evidentiary hearing." *Iromuanya II*, 806 N.W.2d at 419. The Court's posture may have been due to the disorganized construction of Iromuanya's brief in *Iromuanya II*. *Cf.* Filing No. 12-9, Brief of Appellant *Iromuanya II*, at ECF p.i (where the "Table of Contents" contained a heading that referenced only the district court's denial of an evidentiary hearing) *with* Filing No. 12-9, Brief of Appellant *Iromuanya II*, at ECF p. 2 (where the "Assignments of Error" contained an ineffective assistance of counsel claim pursuant to *Strickland v. Washington*, *supra*, as its own assignment of error). Nevertheless, this court is satisfied that the claims were fairly presented to, *see Dye v. Hofbauer*, 546 U.S. 1, 3-4 (2005) ("Outlining specific allegations of prosecutorial misconduct, the text of the brief under this argument heading cites the Fifth and Fourteenth Amendments to the Constitution of the United States."), and adjudicated by, the Nebraska Supreme Court in *Iromuanya II*.

*United States*, 268 F.3d 560, 561 (8th Cir. 2001); *Williamson v. Jones*, 936 F.2d 1000, 1004 (8th Cir. 1991).

The first prong of the Strickland test requires the petitioner to demonstrate that his or her attorney failed to provide reasonably effective assistance. *Strickland*, 466 U.S. at 687. In conducting such a review, the courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 689. When addressing a claim of ineffectiveness, a court must assess the "reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 691.

The second prong requires the petitioner to demonstrate "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also* *Hubbeling v. United States*, 288 F.3d 363, 365 (8th Cir. 2002). "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. A court need not address the reasonableness of the attorney's skills and diligence if the movant cannot prove prejudice under the second prong of this test. *See* *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).

In the context of section 2254 habeas corpus petitions, ineffective assistance of counsel claims are afforded "a substantially higher threshold" of deference that does not focus on "whether a federal court believes the state court's determination [under *Strickland*] was incorrect" but whether the "determination was unreasonable[.]" *Knowles*

*v. Mirzayance*, 556 U.S. 111, 123 (2009). Additionally, "because the *Strickland* standard is a general standard[,]" state court decisions are given "doubly deferential judicial review[.]" *Id.*

### iii. Analysis

In order for this court to grant Iromuanya's petition, it must find that the Nebraska Supreme Court's decisions (1) were contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d)(1)-(2) (1996).

### 1. Plea Negotiations

Since Iromuanya argues the Nebraska Supreme Court's decision regarding counsel's assistance in plea negotiations resulted from an unreasonable factual determination, *See* Filing No. 39, at ECF p. 17, the court will look to section 2254(d)(2) as the controlling statutory provision. As a preliminary matter, however, Iromuanya must rebut, by clear and convincing evidence, the Nebraska Supreme Court's factual determinations. *See Cochran v. Dormire*, 701 F.3d 865, 869 (8th Cir. 2012) (citing 28 U.S.C. § 2254(e)(1)).

First, Iromuanya challenges the Nebraska Supreme Court's factual determination that he did not allege in his postconviction brief that the prosecutor offered a plea agreement. Filing No. 39, at ECF pp. 15-17. Iromuanya thus argues that he did "allege a prosecution offer in his post-conviction motion[.]" Filing No. 39, at ECF p. 17. As evidence of this claim, Iromuanya quotes an excerpt from his postconviction brief, which

states, "[Iromuanya] was not adequately informed of the status and substance of offers made by the prosecution[.]" Filing No. 39, Brief in Support of Petition, at ECF pp. 15-16 (quoting Filing No. 12-9, Brief of Appellant *Iromuanya II*, at ECF p. 33). Although the court concedes that reasonable minds could differ interpreting whether the statement alleges, albeit implicitly, that the prosecution had in fact made a plea offer, "even if reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's . . . determination." *Wood v. Allen*, 558 U.S. 290, 301 (2010) (internal citations omitted). Even assuming, arguendo, that this court believed the Nebraska Supreme Court incorrectly interpreted Iromuanya's allegation, "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Cochran v. Dormire*, 701 F.3d 865, 869 (8th Cir. 2012) (quoting *Wood v. Allen*, 558 U.S. 290 (2010)). The court finds that Iromuanya has not rebutted the Nebraska Supreme Court's factual determination by clear and convincing evidence.

Next, Iromuanya argues that the Nebraska Supreme Court's decision—that defense counsel was not deficient during plea negotiations—was based on an unreasonable determination of the facts. Filing No. 39, at ECF pp. 15-17. As stated in its opinion, the Nebraska Supreme Court's decision was based on two factors: (1) Iromuanya's failure to allege a prosecution plea offer and (2) defense counsel's statement at Iromuanya's sentencing hearing. *Iromuanya II*, 806 N.W.2d at 809. As to the first factor, Iromuanya argues that his allegation, "if true, would justify a finding of deficient performance[,]" thus satisfying the first prong under *Strickland*. Filing No. 39, at ECF p. 16. As for the second prong, regarding prejudice, Iromuanya argues that "had

[he] received objectively reasonable representation, [he] would have pursued and plead [sic] to a lesser offense(s) than the offenses to which he was charged and convicted." *Id.* As to the second factor, Iromuanya argues that it is unreasonable because it requires two additional assumptions: Iromuanya made the only offer, and the prosecution made no counter-offer. Filing No. 39, at ECF p. 16. Iromuanya speculates that "[i]t is completely possible that, while the prosecution rejected Iromuanya's offer, [the prosecution] made a counter-offer that was never communicated to Iromuanya." Filing No. 39, at ECF p. 17. In its opinion, the Nebraska Supreme Court concluded, "Under this record, Iromuanya's allegations are insufficient to overcome the presumption that his trial counsel acted reasonably." *Iromuanya II*, 806 N.W.2d at 809. This court agrees with the Nebraska Supreme Court. Iromuanya has established neither that "counsel's representation fell below an objective standard of reasonableness[,]" *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009), nor "that there [was] a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). As noted above, the Nebraska Supreme Court's factual determination regarding its interpretation of Iromuanya's allegation was reasonable. Furthermore, the record supports defense counsel's statement during the sentencing hearing, and this court cannot say the Nebraska Supreme Court's decision was unreasonable for having relied upon it. This court concludes that the Nebraska Supreme Court's decision—that defense counsel's performance during plea negotiations was not deficient—was based on a reasonable determination of the facts in light of the evidence presented in the State court proceeding. *See* 28 U.S.C. § 2254(d)(2).

The court also denies Iromuanya's request for an evidentiary hearing. Iromuanya alleges in his petition that, subsequent to his trial and conviction, defense counsel informed his mother of a prosecution offer. Filing No. 1, at ECF p. 6. However, Iromuanya fails to identify with any sort of particularity *when* after his trial he learned of this alleged offer. To warrant an evidentiary hearing the claim must rely on "a factual predicate that could not have been previously discovered through the exercise of due diligence[.]" 28 U.S.C. § 2254(e)(2)(A)(ii). Iromuanya's claim fails to meet this threshold.

Given the foregoing, Iromuanya has failed to rebut the Nebraska Supreme Court's factual determination and establish that the Nebraska Supreme Court's decision was based on a unreasonable determination of the facts in light of the evidence adduced during the state court proceedings.

## 2. Jury Instructions

Iromuanya's second ineffective assistance of counsel claim concerns 28 U.S.C. § 2254(d)(1). Iromuanya argues that defense counsel was ineffective because counsel "failed to recognize that the prosecutor had a duty to prove beyond a reasonable doubt the absence of a sudden quarrel provocation regarding the second degree murder charge and therefore failed to object on that basis." *See* Filing No. 7, at ECF p. 1. Pursuant to 28 U.S.C. § 2254(d)(1), this court may grant Iromuanya's petition only if it concludes that the Nebraska Supreme Court's "decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

Iromuanya's focuses his argument primarily on the "wildly fluctuating" changes to Nebraska's second-degree murder and manslaughter laws. Filing No. 39, at ECF p. 29.

Because the "law on second degree murder and sudden quarrel manslaughter was in flux for decades[,]" Iromuanya argues, "it was indeed deficient performance for Iromuanya's attorney not to insist that 'sudden quarrel' be a consideration on the second degree murder/attempted second degree murder charges." *Id.* He further argues, "federal law was such that Counsel should have requested instructions making it clear that the state bore the burden of proving absence of sudden quarrel."[17] *Id.*

On postconviction review, the Nebraska Supreme Court found that defense counsel's performance was not deficient. *See Iromuanya II*, 806 N.W.2d at 434-35. The Nebraska Supreme Court observed that "[t]he absence of a provocation [was] not an element of second degree murder [at the time of the trial], and no element of the charge [was] presumed." *Id.* at 435. Thus, the Nebraska Supreme Court concluded, defense counsel's "failure to anticipate a change in existing law d[id] not constitute deficient performance." *Id.* at 435. This court agrees with the Nebraska Supreme Court's decision, and thus concludes it was neither contrary to, nor an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

In *Strickland v. Washington*, the United States Supreme Court stated, "[i]in any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." 466 U.S. at 688. Under Nebraska law, "absence of a provocation is not an element of second degree murder[.]" *Iromuanya II*, 806 N.W.2d at 435. Thus, it would have been

_____

[17] The court notes the issue concerning burden of proof is addressed in Iromuanya's Claim Two. *See* Filing No. 7, at ECF p. 2.

erroneous, as a matter of Nebraska law, to include Iromuanya's requested negative element to the instruction for second-degree murder.[18] As such, the court cannot conclude defense counsel's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. At the time of Iromuanya's trial, notwithstanding the subsequent changes to Nebraska's second-degree murder and manslaughter laws, a jury could not consider a sudden quarrel provocation in deciding intent for second-degree murder. *Id.* The court rejects the notion that counsel should have foreseen a change in the existing law at the time of trial. The Eight Circuit has addressed the issue and determined that counsel is not deficient for failing to anticipate a change in existing law. *See Carter v. Hopkins*, 92 F.3d 666, 670 (8th Cir.1996) ("[C]ounsel need not 'anticipate a change in existing law' to render constitutionally effective assistance of counsel."), *cert. denied,* 520 U.S. 1107 (1997); *see also Ruff v. Armontrout*, 77 F.3d 265 (8th Cir.1996) (failure to anticipate change in existing law does not amount to ineffective assistance of counsel), *cert. denied,* 519 U.S. 889; *Johnson v. Armontrout*, 923 F.2d 107 (8th Cir.1991), cert. denied 502 U.S. 831, 112 S.Ct. 106, 116 L.Ed.2d 75; *Horne v. Trickey*, 895 F.2d 497 (8th Cir.1990). "[T]he proper standard for attorney performance is that of reasonably effective assistance[,]" *Strickland*, 466 U.S. at 687, and this court believes Iromuanya's counsel met that standard. Because Iromuanya's counsel was not deficient, Iromuanya cannot establish that there is a reasonable probability the outcome would have been different. *See Strickland*, 466 U.S.

---

[18] Iromuanya also argues, "federal law was such that Counsel should have requested instructions making it clear that the state bore the burden of proving absence of sudden quarrel. [*In re] Winship*, [397 U.S. 358 (1970)], *Mullaney [v. Wilbur*, 421 U.S. 684 (1965)], and *Apprendi* [*v. New Jersey*, 530 U.S. 466 (2002)], all demand such an instruction, and each of those cases was decided well before [his] trial." Filing No. 39, at ECF p. 29. The court will address this issue beginning at page 22, below.

at 694 ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.").

Given the foregoing, Iromuanya has failed to establish that the Nebraska Supreme Court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1).

### b. Claims Two and Three: Due Process Violations

Iromuanya's second claim is that he was denied due process of law in violation of the Fourteenth Amendment *because* the trial court: (1) omitted a "lesser included offense instruction for attempted manslaughter"; (2) failed to instruct the jury that the prosecutor must prove beyond a reasonable doubt "the absence of a sudden quarrel provocation" regarding the charges of attempted second degree murder and second degree murder; and (3) did not properly instruct the jury on the distinction between "intent to kill" and "intent to kill resulting from a sudden quarrel." Iromuanya's third claim alleges that he was denied due process of law in violation of the Fourteenth Amendment *because* the Nebraska Supreme Court upheld the trial court's errors, as set forth directly above in Claim two, parts two and three. Based on these alleged errors, Iromuanya seeks habeas relief.

### i. Procedural Defenses

The State argues that Claims two and three both have been procedurally defaulted. Filing No. 22, at ECF p. 6. To further this argument, the State asserts that Iromuanya's due process claims were made only "in the context of the [sic] Iromuanya's

Sixth Amendment right to effective assistance of counsel or as matters of state law, not as violations of the constitutional right to due process." Filing No. 22, at ECF p. 6. On the other hand, Iromuanya argues these claims are not procedurally defaulted because they were both fairly presented to, and addressed by, the Nebraska Supreme Court. Filing No. 39, at ECF pp. 20-21. After carefully reviewing the record, the court finds that Iromuanya's Claims two and three are either procedurally defaulted or not proper for this court's review.

### ii. Principles of Law

"Ordinarily, a federal court reviewing a state conviction in a 28 U.S.C. § 2254 proceeding may consider only those claims which the petitioner has presented to the state court in accordance with state procedural rules." *Arnold v. Dormire*, 675 F.3d 1082, 1086-87 (8th Cir. 2012) (internal citations and quotations marks omitted). "In order to fairly present a federal claim to the state courts, the petitioner must have referred to 'a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts.'" *McCall v. Benson,* 114 F.3d 754, 757 (8th Cir. 1997) (quoting *Myre v. State of Iowa,* 53 F.3d 199, 200 (8th Cir. 1995)). "If a petitioner has not presented his habeas corpus claim to the state court, the claim is generally defaulted." *Carney v. Fabian*, 487 F.3d 1094, 1096 (8th Cir. 2007) (citing *Barrett v. Acevedo,* 169 F.3d 1155, 1161 (8th Cir. 1999) (en banc)). "Resolving whether a petitioner has fairly presented his claim to the state courts, thus permitting federal review of the matter, is an intrinsically federal issue that must be determined by the federal courts." *Wyldes v. Hundley*, 69 F.3d 247, 251 (8th Cir. 1995). "Because exhaustion functions as a federal

court gatekeeper, the federal, not the state, courts decide when the state process has been exhausted or should be deemed ineffective because of delay." *Id.* (internal citation and quotations marks omitted).

The United States Supreme Court "ha[s] stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (citing *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984)). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions . . . . [A] federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle*, 502 U.S. at 67-68; *see Arnold*, 675 F.3d at 1086 ("We do not second-guess the decision of a Missouri state court on Missouri law.").

### iii. Analysis

#### 1. Claims Two and Three

As noted above, the court finds that Iromuanya's Claims two and three are either procedurally defaulted or not proper for this court's review. Furthermore, the court finds that even if the claims had been properly raised and addressed, they are nevertheless without merit. As such, the court also will address the claims on the merits.

Claim two, part one, concerns the trial court's failure to instruct the jury on the lesser-included offense of attempted manslaughter. However, Iromuanya did not raise this claim either in his direct appeal brief or in his motion for postconviction relief. In fact, in his direct appeal brief, Iromuanya conceded "[a]ttempted manslaughter does not currently exist in Nebraska." Filing No. 12-6, at ECF p. 39 (citing Nebraska caselaw). Even assuming, *arguendo*, that the trial court failed to instruct the jury on the lesser-

included offense of attempted manslaughter, the United States Supreme Court "has never held that there is a constitutional requirement that lesser-included offense instructions be given in noncapital cases." *Carney v. Fabian*, 487 F.3d 1094, 1097 (8th Cir.2007). As such, neither the trial court nor the Nebraska Supreme Court denied Iromuanya due process of the law. Claim one, part one, is procedurally defaulted or without merit, or both.

Claim two, parts two and three, and Claim three, entirely, concern the trial court's failure to instruct the jury and the Nebraska Supreme Court's subsequent affirmance. Iromuanya argues the trial court failed to instruct the jury (1) about the prosecution's burden to prove beyond a reasonable doubt the absence of sudden quarrel provocation and (2) about the distinction between "intent to kill" and "intent to kill resulting from a sudden quarrel provocation." Iromuanya raised neither claim in his brief on direct appeal. The court finds that Claim two, part three, and Claim three, part two, were neither presented to, nor addressed by, the Nebraska Supreme Court. Accordingly, those claims are procedurally defaulted. Iromuanya argues the remaining claims—Claim two, part two, and Claim three, part one—were fairly presented to, and addressed by, the Nebraska Supreme Court on postconviction review.

Iromuanya argues the due process claim was fairly presented to the Nebraska Supreme Court by his referencing a denial of due process within the broader context of his ineffective assistance of counsel claim. Filing No. 22, at ECF p. 20. In his postconviction brief, Iromuanya argued the failure to instruct the jury regarding absence of sudden quarrel provocation relieved the State of its burden to prove that negative element. Filing No. 12-9, at ECF pp. 23-24. Therefore, Iromuanya concluded, defense

counsel's failure to object on that basis resulted in denials of due process and effective assistance of counsel. *Id.* As further evidence that he fairly presented the due process claim, Iromuanya argues the Nebraska Supreme Court addressed the issue of due process in its opinion, which states,

> We reject Iromuanya's argument that the instructions relieved the State of its burden to prove beyond a reasonable doubt that the attempt to cause death was not committed during a sudden quarrel provocation. Due process requires the prosecution to prove, beyond a reasonable doubt, every fact necessary to constitute the crime charged. Here, the instruction for attempted second degree murder of Jenkins informed the jury that the State had to prove Iromuanya's intent to kill beyond a reasonable doubt. The absence of a provocation is not an element of second degree murder, and no element of the charge is presumed. If the jurors had believed that Iromuanya did not intend to kill Jenkins, the instructions required them to find him not guilty of attempted second degree murder.

Filing No. 22, at ECF p. 21 (citing *Iromuanya II*, 806 N.W.2d at 435).

It is true the Nebraska Supreme Court mentions due process in its *Iromuanya II* opinion; however, the Nebraska Supreme Court addresses due process only as it relates to Iromuanya's ineffective assistance of counsel claim. It is clear, from both Iromuanya's postconviction brief and the Nebraska Supreme Court's opinion in *Iromuanya II*, that all claims funneled through a Sixth Amendment filter. Iromuanya argued the absence of a sudden quarrel provocation ought to have been included in the instructions as a negative element of the second-degree murder charges. The gravamen of his argument, however, was not that the trial court erred by refusing its inclusion, which was correct under Nebraska law, but rather that defense counsel erred by not recognizing the supposed necessity of its inclusion and thus failed to object on those grounds. Even assuming Iromuanya *had* claimed trial court error, the error would be one of state law and not a violation of the federal Constitution.  Had his conviction or

direct appeal occurred after the decisions in State v. Smith, 282 Neb. 720, 806 N.W.2d 383 (2011) or State v. [William] Smith, 284 Neb.636, 822 N.W.2d 401(2012) the trial court's jury instructions would have required the procedure he asserts herein. Manslaughter on a sudden quarrel is not a lesser included of second degree murder and does not require a sequential decision. The Nebraska Supreme Court did not hold this change in the law either constitutional or retroactive. See [William] Smith supra. Unfortunately for Mr. Iromuanya, the inclusion of elements to a second-degree murder instruction is an issue of state, not federal, law. Accordingly, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. Estelle, 502 U.S. at 67-68 (1991); see Arnold, 675 F.3d at 1086 ("We do not second-guess the decision of a Missouri state court on Missouri law.").The Writ of Habeas Corpus was designed to liberate the unlawfully imprisoned. The court finds no such unlawful imprisonment in Iromuanya's case.

IT IS ORDERED that Iromuanya's petition for writ of habeas corpus and request for an evidentiary hearing are denied. A judgment in conformity with this Memorandum and Order will issue this date.


DATED this 31st day of March, 2016

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge